**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICK C.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 20 C 608** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **ANDREW SAUL, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§416(i), 423, 1381a, 1382c, over four years ago. (Administrative Record (R.) 273-89). He initially claimed that he became disabled as of October 2, 2011, or December 31, 2012 due to degenerative changes in his spine, post traumatic stress disorder, major depression, anxiety, and fibromyalgia. (R. 273, 283, 328). He later amended his alleged onset date to November 16, 2013. (R. 317). Over the next three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on January 27, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on April 29, 2020. [Dkt. #11]. Plaintiff asks the court to reverse and remand the

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

Commissioner's decision, while the Commissioner seeks an order affirming the decision.

## I.

### A.

Plaintiff was born on August 12, 1963, and was about 48 at the time he claims he became unable to work. (R. 273). In his application, plaintiff said he has two years of college. (R. 329). However, he has told health-care providers he dropped out of high school and has a GED. (R. 1227, 1308, 1319-20). Plaintiff has a sporadic work record, with long periods of unemployment from 1989 through 1994, 1999 through 2001, and from 2012 on. (R. 307-08). The first of those periods was due to a prison sentence for drug trafficking tied to and involvement with a motorcycle "club." (R. 1227, 1308). His most recent job was as a manager for an auto parts store from August 2003 to October 2011. (R. 320). Plaintiff claims that, about that time he had back surgery and had to become less active. He could no longer deal with people and he would become stressed out. (R. 62-63). In 2013, he tried to hang himself in his garage. He was on benzodiazepine, cocaine, and opiates at the time. (R. 64). At his administrative hearing, he said he hadn't even had a drink in four years. (R. 64).

As is generally the case in these proceedings, the medical record is immense – about 900 pages – and, as is also generally the case, unorganized and largely irrelevant. (R. 439-1321). As such, a long and tedious summary of the plaintiff's files will be dispensed with, and the medical record will be referenced only insofar as is necessary to address the parties' arguments.

After plaintiff tried to hang himself in July 2013, he was diagnosed with acute respiratory failure, suicidal ideation, anxiety and depression. (R. 739). Doctors noted him to be a suicide risk, poorly responsive, and noncooperative. (R. 717). Blood tests were positive for cocaine,

2

benzodiazepine, and opiates. (R. 722). He was stressed and delusional and was diagnosed with major depressive disorder, fibromyalgia, and assigned a GAF score of 20 (R. 791-792), which indicates some danger of hurting self or others, or gross impairment in communication. He was admitted to MacNeal Hospital, and he underwent a psychiatric evaluation with Dr. Lee Weiss. (R. 912). Dr. Weiss reported that he was not capable of sentence completion or abstract skills. (R. 914). He exhibited poor hygiene, psychomotor retardation, impaired insight and judgment, a depressed mood and affect, dysphoric mood, anhedonia, general anxiety, and suicidal ideation. (R. 915). Dr. Weiss diagnosed major depression. (R. 916).

On June 1, 2016, plaintiff underwent a physical consultative exam with Dr. Jorge Aliaga ordered by the Social Security Administration. (R. 1215). Dr. Aliaga diagnosed chronic low back pain, fibromyalgia, depression, and left knee osteoarthritis. There was somewhat decreased range of motion in the left knee, 100 degrees out of 135. (R. 1217-1218). An old x-ray of plaintiff's knee from 2011 showed only trace narrowing of the joint space and not effusion. (R. 696). Dr. Robert Puls Psy.D. performed a psychiatric consultative exam the same day. Dr. Puls noted that the major feature of plaintiff's mental status was his depressed affect, which was severely depressed with little variation. (R. 1320). Dr. Puls felt plaintiff's abilities were severely limited by back problems, and that he demonstrated signs of significant limitations in concentration, attention and sustained effort; low frustration tolerance; and compromised ability to maintain concentration and effort over a significant amount of time. (R. 1320).

On July 22, 2016, plaintiff saw Dr. Weiss again, and this time the doctor diagnosed panic disorder with agoraphobia and major depression. (R. 1227). Dr. Weiss thought it was unlikely plaintiff could work consistently in a typical job setting. (R. 1227). In October, Dr. Weiss noted

3

plaintiff continued to struggle with anxiety, depression and chronic pain and repeated his diagnosis of major depression and panic disorder with agoraphobia. (R. 1229-1230). Nevertheless, notes from every one of Dr. Weiss's sessions with the plaintiff indicate that plaintiff's concentration, attention span, thought process, judgement, insight, etc., were all normal. (R. 1251, 1253, 1256, 1259, 1263, 1266, 1307-12). The doctor said the medication plaintiff was taking was working well, as those results attest. (R. 1307-12).

On October 16, 2016, Dr. Weiss completed a mental impairment questionnaire from plaintiff's attorney. He reported a diagnosis of major depression, panic disorder, post-traumatic stress disorder, and fibromyalgia. He assigned a GAF score of 51-60 (R. 1315), indicating serious symptoms or a serious impairment in social or occupational functioning. Plaintiff's symptoms included sleep disturbance, emotional liability, mood disturbance, recurrent panic attacks, hostility, difficulty thinking or concentrating, social withdrawal, suicidal ideation, and intrusive recollections of traumatic experience. (R. 1315). In a distinct departure from all of his examination findings, Dr. Weiss felt plaintiff had marked limitations in maintaining attention for extended periods, performing activities within a schedule, sustaining an ordinary routine, working in coordination with or proximity to others, and would likely miss more than three days of a month if employed. (R. 1316). He had moderate restrictions in activities of daily living and marked difficulties in maintaining social functioning and concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and repeated episodes of deterioration or decompensation. (R. 1317).

On March 10, 2018, Dr. Weiss completed another questionnaire regarding plaintiff's condition as of December 31, 2016. (R. 1303). Dr. Weiss estimated that plaintiff's condition had prevented him from working even in a simple repetitive job for well over five years. (R. 1304). His

4

social skills were limited and a typical interaction with pears and supervisors would likely exacerbate his symptoms. (R. 1304). His chronic medical problems would interfere with consistent attendance, and despite a brief period of improvement, he was not capable of sustaining competitive employment. (R. 1304-1305).

## B.

After an administrative hearing at which plaintiff, represented by counsel, and a vocational expert appeared and testified, the ALJ found that plaintiff was not disabled under the Social Security Act. The ALJ determined the plaintiff had the following severe impairments: schizophrenic bipolar disorder, anxiety disorder, depressive disorder, antisocial disorder, osteoarthritis, and polysubstance abuse. (R. 29). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 30-32). In making this finding, the ALJ felt that plaintiff's psychological impairments resulted in a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting or maintaining pace; and a moderate limitation in adapting or managing herself. (R. 30-32).

The ALJ then determined that plaintiff could perform light work, with a number of additional limitations:

> except he can occasionally reaching [sic] overhead to the left, and occasionally reaching [sic] overhead. to the right. For all other reaching, he can reach occasionally to the left, and can reach occasionally to the right. The claimant can climb ramps and stairs occasionally, but he can never climb ladders, ropes, or scaffolds; balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The individual is able to understand, carry out, remember and perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work) but would

5

complete all end of day goals; involving only simple work-related decisions with the ability to adapt only to routine work place change. The individual is occasionally able to interact with supervisors and coworkers, but he should perform no tandem tasks with coworkers and should have only superficial non-transactional contact with the general public.

(R. 32-33).

The ALJ went on to summarize the plaintiff's claims and allegations, and the medical record. The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 34). The ALJ explained that plaintiff's allegations were not consistent with the medical evidence, treatment has been routine and conservative, and his daily activities were not what one would expect form someone with the limitations plaintiff claimed. (R. 36). The ALJ also considered the medical opinion evidence, affording only "some" or "partial" weight to the opinions of the various state agency doctors who reviewed plaintiff's medical records as part of his application and as part of prior applications. (R. 36-37). The ALJ also accorded little weight to the opinion of plaintiff's treating psychiatrist, and some weight to the opinion of the consultative examining psychologist. (R. 38).

Next, the ALJ, relying on the testimony of the vocational expert who testified at the third hearing, found that, given his residual functional capacity, the plaintiff could perform a substantial number of light jobs, examples being parts distributor (DOT 921.685-046; 6,900 jobs in the national economy), scaling machine operator (DOT 521.685-386; 28,400 jobs in the national economy), and dealer accounts investigator (DOT 241.367-648; 52,900 jobs in the national economy). (R. 41). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 42).

6

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)*.*

The substantial evidence standard is a low hurdle to negotiate, *Biestek* , 139 S. Ct. at 1154, but, in the Seventh Circuit, the ALJ also has an obligation to build what is called "an accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record

to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). The subjectivity of the requirement – one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare – makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

### A.

The plaintiff has quite a few issues with the ALJ's decision, which we will endeavor to address one by one, beginning with the most familiar. The plaintiff argues that the ALJ failed to accommodate his moderate limitation in concentration, persistence, and pace. As such, we have another in an unending line of these "CPP" cases. On the one hand, ALJs seem to refuse to indicate to vocational experts that an individual has a moderate limitation in CPP, and instead insist on fashioning alternative ways of addressing the problem: simple work, routine work, rote work, etc. *See, e.g., Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020)("... the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (reversing and explaining that the observation that someone can perform simple tasks says nothing about whether she can do so over the course of a full workday); *Mischler v. Berryhill*, 766 Fed.Appx. 369, 376 (7th Cir. 2019)("... 'simple routine and repetitive tasks' in a low stress job ... fails to account for the 'moderate' difficulties

8

in concentration, persistence, and pace...."); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)("... we have "repeatedly rejected the notion that a hypothetical ... confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.").

On the other, the Seventh Circuit has stopped short of providing an exact guide for ALJs in these cases. *See, e.g., Crump*, 932 F.3d at 570 ("As a matter of form, the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement . . . ."); *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)("Though particular words need not be incanted, . . ."). There is, as the Seventh Circuit has conceded in the past, uncertainty in the law in this area. *Kusilek v. Barnhart*, 175 F. App'x 68, 71 (7th Cir. 2006). And so, the issue comes up endlessly, adding a significant slice of the myriad Social Security disability case that come to the court for review.

Here, the ALJ explained that he was addressing plaintiff's decreased ability to concentrate by limiting him "to simple, routine and repetitive tasks, but not at a production rate pace while still completing all end of day goals." (R. 39). Limitations to "simple, routine, and repetitive" work or tasks, of course, are often rejected by the Seventh Circuit. *See, e.g., Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020)(collecting cases). The same fate has awaited "production rate" limitations from time to time. *See, e.g., DeCamp*, 916 F.3d at 676; *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). While it is difficult to distill a guideline from the many Seventh Circuit cases on this topic, when the Seventh Circuit has found such limitations to pass muster, it has generally been because the ALJ took his phrasing directly from a medical opinion – often that of a state agency reviewing doctor. *See, e.g., Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020); *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020); *Morrison v. Saul*, 806

F. App'x 469, 474 (7th Cir. 2020); *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Johansen*

*v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002).  The Court of Appeals went down another road in

*Martin v. Saul*, allowing the ALJ's concentration, persistence, and pace limitation to stand seemingly

because the ALJ broke each limitation down, explaining thoroughly how he went from point A to point

B for concentration, for persistence, and for pace.  950 F.3d at 374.

Here, it has to be said that the ALJ, at least hit the target the court provided in *Martin*.  He

specifically broke down concentration, persistence, or pace, and  explain how his limitations accounted

for each one:

> The combined effects of the signs and symptoms from all of his impairments including
> pain from his physical impairments side effects from his medication, impaired memory,
> and decreased ability to concentrate from his mental impairments dictated that he would
> be limited to understanding, carrying out, remembering and performing simple routine
> and repetitive tasks but not at a production rate pace while still completing all end of
> day goals. He was also limited to performing tasks involving only simple work-related
> decisions because of his limitations in memory and concentration. Moreover, the mental
> health evidence . . . supports finding the claimant has limitations in interacting with
> other. The claimant's limitations in social functioning have been accommodated in the
> residual functional capacity  by limiting him to occasional interaction with supervisors
> and co-workers and only superficial [] non-transactional contact with the general public.
> The claimant's mild limitation in adaptation ha[s] been accommodated by finding he
> had the ability to adapt only to routine work place changes.

(R. 39-40).  This rather detailed explanation tracks closely to what the ALJ did in *Martin*, where the

court found that:

> the ALJ tailored [plaintiff's] RFC to her CPP limitations without assuming that
> restricting her to unskilled work would account for her mental health impairments.
>
> Start with concentration. The second ALJ found that "[plaintiff] could maintain the
> concentration required to perform simple tasks, remember simple work-like procedures,
> and make simple work-related decisions." Moving to persistence, the ALJ, in defining
> and tailoring the RFC, further determined that [plaintiff] stay on-task and thereby "meet
> production requirements." Of course, even if someone is on-task, it is still possible she

> may operate at such a slow pace that an employer would not find her work satisfactory. Hence, the second "P"—pace—must enter the equation. The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented.

*Martin*, 950 F.3d at 374. That's certainly close to what we have here. Could the ALJ have done more? Perhaps, but we aren't sure what and plaintiff does not provide any suggestions of what might satisfy him. We conclude that the ALJ did enough. "[T]here is only so much specificity possible in crafting an RFC. The law required no more." *Martin*, 950 F.3d at 374.

The ALJ's efforts also follow the line of cases wherein an ALJ simply adopts the narrative of restrictions offered by a medical expert as accommodating a moderate limitation in concentration, persistence, and pace. Here, the ALJ didn't fully adopt the opinions of the state agency reviewers, according them partial weight, but he tracked them nearly identically. (R. 37). It's easy to see where the mental RFC came from, and all the ALJ had to do was enough to allow for meaningful review. *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018); *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). We are obviously able to follow the path of the ALJ's reasoning, *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015), so he met that mark here.

**B.**

Next, the plaintiff finds fault with the ALJ's rejection of the opinion of plaintiff's treating psychiatrist, Dr. Weiss. Dr. Weiss opined that plaintiff was unable to work due to his marked deficiencies in concentration and inability to complete tasks. (R. 1315-17). The ALJ felt Dr. Weiss's opinion that plaintiff was unable to work due to his psychological issues was out of proportion and inconsistent with the doctor's clinical notes and record of treatment. That's a perfectly acceptable reason for rejecting a treating physician's opinion. *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir.

11

2019); *Winsted v. Berryhill*, 915 F.3d 466, 472 (7th Cir. 2019). It must be remembered that all the ALJ has to do is "minimally articulate" his or her reasons for rejecting a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 503–04 (7th Cir. 2004). The ALJ doesn't have to delve into each factor that goes into the assessment of medical opinion, chapter and verse. *See, e.g., Elder*, 529 F.3d at 415–16 (affirming ALJ's decision where ALJ discussed only two of the factors)); *Henke v. Astrue*, 498 Fed.Appx. 636, 640 n.3 (7th Cir. 2012) (finding that it was enough that the ALJ "note[d] the lack of medical evidence supporting [the treating physician's] opinion" and "its inconsistency with the rest of the record").

The problem with Dr. Weiss's opinion – and the problem with the plaintiff's argument – is glaringly apparent – and exactly what the ALJ said it was. Plaintiff obviously disagrees and claims that Dr. Weiss's treatment notes support his dire assessment of the plaintiff's capabilities, but fails to explain how. But "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). This isn't even a case of some notes being positive and some being negative, as often occurs. *See, e.g., Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Every single one of the doctor's clinical notes from sessions with the plaintiff are essentially identical, and they are all positive. They each say:

> Orientation: Oriented x3;
>
> Memory: short term memory intact, remote memory intact and recent registration memory intact
>
> Attention/Concentration: the attention span was normal and normal concentrating ability.

(R. 1227). Every note says that thought processes were all normal, and there was no sign of any

abnormal ideation. (R. 1227). And every note says that judgement and insight were intact. (R. 1227). This goes not only for every note the plaintiff cites in his brief (R. 1251, 1253, 1256, 1259, 1263, 1266), but for the very notes that Dr. Weiss attached to his second opinion, in which he said plaintiff's markedly deficient concentration prevented him from working. (R. 1307-12). Dr. Weiss's treatment notes consistently undermine his opinion; every time concentration and attention span are assessed as normal, as is every other clinical sign. The ALJ could not possibly have accepted the doctor's "opinion."

Throughout his brief, plaintiff recites Dr. Weiss's diagnoses of post-traumatic stress disorder, panic disorder and major depression. [Dkt. #16, at 2, 5, 6; #24, at 3]. But, of course, diagnosis is not the same as disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity and, concretely, whether, as she testified . . . they have caused her such severe pain that she cannot work full time."). Psychological impairments might be disabling or they might not. *See, e.g., Truelove v. Berryhill*, 753 Fed.Appx. 393, 394 (7th Cir. 2018)("intermittent explosive personality disorder, schizoaffective disorder, cannabis abuse, mood disorder, and borderline intellectual functioning" not disabling); *Kelham v. Berryhill*, 751 Fed.Appx. 919, 921-22 (7th Cir. 2018)("bipolar disorder, anxiety, and borderline intellectual functioning" not disabling). It was up to the plaintiff to prove he is disabled by providing evidence beyond a list of diagnoses. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, . . . ."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate

13

records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c)( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). The only evidence plaintiff cites to support Dr. Weiss's opinion that plaintiff can't work is the doctor's diagnoses. [Dkt. #16, at 6 ("Dr. Weiss's opinions were further supported by continued diagnoses of PTSD, panic disorder and major depression.")].

Contrary to plaintiff's supposition, it does not take an expert to see a chasm of difference between a dozen examinations finding normal concentration – and normal everything else – and one opinion stating that concentration was markedly limited. It is preposterous to suggest that an ALJ must accept such an "opinion," even in the face of diametrically opposed clinical notes. But that's what plaintiff's counsel argues for here. If that were the case, there would be no regulation, or case law, saying that a doctor's opinion has to be supported by clinical findings.

The plaintiff has a similar issue with the ALJ's according only some weight to the opinion of the consultative examiner that plaintiff had difficulty sustaining concentration over time. Dr. Puls thought plaintiff suffered from severe depression, marked by dysphoria, tearfulness and occasional suicidal thoughts and demonstrated signs of significant limitations in concentration, attention and sustained effort over a significant amount of time was significantly compromised by constant and severe clinical depression and anxiety. (R. 1320); [Dkt. #16, at 7]. The ALJ felt these findings were entitled only to some weight in view of the medical record. Again, that is a perfectly acceptable reason for discounting a medical opinion. And, again, the record of plaintiff's medical treatment offers no support at all for such concentration difficulties. Instead, as already explained, treatment note after treatment note documents *normal* concentration and well as *normal* findings in every other examination area.

14

The plaintiff also faults the ALJ for mentioning that the fact that plaintiff regularly cares for his child suggests that he does not suffer from a debilitating deficiency in concentration. The plaintiff contends – at two different points in his brief [Dkt. #16, at 8, 14-15]– that the ALJ ran afoul of caselaw that warns ALJs against equating the ability to handle household chores with the ability to hold down a full-time job. *See, e.g., Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). But an ALJ can and, indeed, is instructed to compare a plaintiff's activity to their allegations of limitations. *See Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir.2011). That's what the ALJ did here; he did not equate caring for a child with holding down a full-time job. He said that such activity – and other activity – ran counter to the plaintiff's allegations regarding the *degree* of his limitations. (R. 36, 38). Plaintiff's argument is based on a misreading of the ALJ's decision.

## C.

The remainder of the plaintiff's arguments move into the realm of nitpicking. But "rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). *Accord Castile v. Astrue*, 617 F.3d 923, 928–29 (7th Cir.2010). What the plaintiff seems to be going for here is a remand by a thousand paper cuts. The Seventh Circuit has frequently criticized this type of brief-writing, *see Dynegy Mktg. & Trade v. Multiut Corp*., 648 F.3d 506, 513 (7th Cir. 2011); *United States v. Pearson*, 340 F.3d 459, 464 (7th Cir. 2003); *United States v. Evans*, 92 F.3d 540, 546 (7th Cir. 1996) calling it, variously, "the equivalent of a laser light show of claims may be so distracting as to disturb our vision and confound our analysis." *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir.2011) (collecting cases); a "scattergun approach [that] generally does not serve [clients] well, *Cole v. Comm'r*, 637 F.3d 767, 772 (7th Cir.2011); or a

15

"kitchen sink approach to briefing [that] cause[s] distraction and confusion, [and] also consumes space that should be devoted to developing the arguments with some promise." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir.2000). A brief containing a similar litany of insubstantial arguments once caused the Sixth Circuit to remark that "[w]hen a party comes to us with nine grounds for reversing the [lower court's decision], that usually means there are none." *Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012).

A prime example: plaintiff criticizes the ALJ for adding some additional limitations to plaintiff's physical RFC than were found in the assessments of the state agency reviewing physicians. [Dkt. #16. At 11-12]. So, the ALJ looked at the medical evidence, and compared the state agency physicians' opinions with it and felt the plaintiff should be somewhat more limited than those doctors thought. The ALJ recited the evidence indicating plaintiff has a mild back impairment that, from time to time, affects the range of motion in his legs. (R. 35). As a result, the ALJ added some restrictions involving climbing stairs and ramps and completely ruled out climbing ladders and scaffolds. (R. 32-33, 35). That the plaintiff faults the ALJ here is a head scratcher – an argument that former Magistrate Judge – now District Court Judge – Iain Johnston aptly called "quizzical." *Karla J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. 2020). If the ALJ was wrong and the plaintiff can climb stairs all day, it doesn't move the needle in the direction of a remand. Is the plaintiff asking for a remand so the next ALJ can find him able to climb ladders?

Then, to make that argument even more "quizzical," the plaintiff complains about a couple of pieces of evidence regarding problems with plaintiff's legs that the ALJ didn't mention:

> Notably here, the ALJ didn't mention the 1+ edema in both knees. . . . However, the ALJ did not mention on exam [plaintiff's] lower extremities showed decreased range of motion of the left knee with limited flexion.

16

[Dkt. #16, at 13].  But,  an ALJ "is not required to mention every piece of evidence." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020).  What a court looks for on review is that the ALJ has not ignored an entire line of evidence bearing on an impairment.  *See, e.g., Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir.2012).  Edema rated 1+ is, by definition, very mild; almost unnoticeable.  The limitation of motion in plaintiff's left knee was 100 degrees out of a normal 135.  Neither finding is terribly significant and both are isolated in a record  that, even the plaintiff seems to concede, is dominated by normal exam results or mild findings. [Dkt. # 16, at 13].

But what makes this argument worse than nitpicking is plaintiff's other issue with the ALJ finding him unable to climb stair and ladders.  Might those two isolated findings account for a restriction against climbing ladders or stairs?  In the real world, probably.  But not in the world of plaintiff's brief.  ALJs are regularly woodshedded for failing to build "logical bridges."  There's certainly no bridge in plaintiff's brief.  He faults the ALJ for adding some restrictions tied to his mild leg knee issues while at the same time claiming the ALJ ignored that very problem.

Finally, the plaintiff complains that the ALJ stated his prescribed treatment was routine and conservative. [Dkt. #16, at 14]; (AR 36).  ALJs are instructed to consider the course of a plaintiff's treatment under the regulations. 20 CFR 404.1529; 416.929, SSR 16-3p. And, if treatment is conservative, it does bear on the assessment of a plaintiff's allegations regarding his symptoms and limitations.  So, there is nothing inherently wrong with the ALJ mentioning that plaintiff's treatment was conservative here.  *See, e.g., Morrison v. Saul*, 806 F. App'x 469, 475 (7th Cir. 2020); *Imse v. Berryhill*, 752 F. App'x 358, 362 (7th Cir. 2018); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Quite the contrary. Plaintiff sees his doctor every two or three months for medication

management, which his doctor says is working well. (R. 1307-14). Plaintiff does not direct the court

to any treatment beyond that which would "bolster[] [plaintiff's] pain allegations and suggest[] that the

ALJ's basis for labeling his treatment conservative was 'misguided.'" *Huber v. Berryhill*, 732 F. App'x

451, 457 (7th Cir. 2018); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014).

## CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [Dkt. #20] is

granted and the ALJ's decision is affirmed.


ENTERED: _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 10/27/20